**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| VALERIA M. RAMUNDO ORLANDO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CA 1:20cv01323 (TSE/JFA) |
| | ) |
| RARE | ) |
| | ) |
| Defendant. | ) |

# PLAINTIFF'S OPPOSITION TO DEFENDANT RARE'S
# MOTION FOR SUMMARY JUDGMENT

January 28, 2022                Carla D. Brown, VSB 44803
                                Daphne Shih Gebauer, VSB 75415
                                CHARLSON BREDEHOFT COHEN
                                  BROWN & NADELHAFT, P.C.
                                11260 Roger Bacon Drive, Suite 201
                                Reston, Virginia 20190
                                cbrown@cbcblaw.com
                                dgebauer@cbcblaw.com
                                (703) 318-6800  Telephone
                                (703) 318-6808  Facsimile
                                *Counsel for Plaintiff, Valeria M. Ramundo Orlando*

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ..................................................................................1

STATEMENT OF MATERIAL FACTS .............................................................3

STANDARD OF REVIEW ...............................................................................14

ARGUMENT ....................................................................................................15

I.      EQUAL PAY ACT ..............................................................................15

II.     GENDER DISCRIMINATION AND HARASSMENT ........................17

        A.      Ms. Ramundo Orlando Suffered Many Adverse Actions
                as a Result of Gender Discrimination Throughout her Employment .......18

        B.      Ms. Ramundo Orlando was Treated Differently From
                Similarly Situated Employees Outside of the Protected Class .................19

        C.      Rare's Stated Reasons for Suspending and
                Terminating Ms. Ramundo Orlando Are Pretextual .................................20

III.    HOSTILE WORK ENVIRONMENT ..................................................21

IV.     RETALIATION ..................................................................................24

        A.      The Evidence Shows Ms. Ramundo Orlando Engaged
                in Protected Activity ....................................................................... 24

        B.      The Evidence Shows Rare Took Adverse
                Employment Actions against Plaintiff ......................................................26

        C.      Rare's Decision to Suspend and Terminate Ms. Ramundo Orlando
                Were Directly Related to Ms. Ramundo Orlando's Complaints
                About Dale Galvin and of Gender Discrimination ...................................27

CONCLUSION ..............................................................................................29

## <u>TABLE OF AUTHORITIES</u>

*Boyer–Liberto v. Fontainebleau Corp.,*786 F.3d 264 (4th Cir. 2015)........................22, 24

*Brennan v. Prince William Hospital Corp.*, 503 F.2d 282 (4th Cir. 1974)......................15

*Brinkley-Obu v. Hughes Training*, 36 F.3d 336 (4th Cir. 1994).......................................15

*Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) .....................................24

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................................14

*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974)................................................. 15

*County of Wash, v. Gunther*, 452 U.S. 161 (1981) ..................................................... 15-16

*DeMasters v. Carilion Clinic*, 796 F.3d 409 (4th Cir. 2015)...........................................25

*Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323 (4th Cir. 2012) ............................... 15

*Earl v. Norfolk State Univ.*, Civil No.: 2:13cv148 (E.D. Va. 2014) ................................15

*Emswiler v. Great Eastern Resort Corp.*, 602 F. Supp. 2d 737 (W.D. Va. 2009)............16

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ....................................................23

*Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243 (4th Cir. 2015) ....................14

*Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619 (4th Cir. 2015).................17

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993).........................................................21-22

*Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277 (4th Cir.2004) .................17

*Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807 (E.D. Va. 2016) ...................................27

*Hodgson v. Fairmont Supply Co.*,454 F.2d 490 (4th Cir. 1972)......................................15

*Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996) ..............................23

*Jeffers v. Thompson*, 264 F.Supp.2d 314 (D. Md. 2003)..................................................18

*Lee v. Wade*, 2015 WL 5147067 (E.D.Va. 2015) ...............................................................17

*Libertarian Party of Virginia v. Judd*, 718 F.3d 308 (4th Cir. 2013) ...............................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)........................14

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .........................................17, 18

*Okali v. City of Bait*, 648 F.3d 216 (4th Cir. 2011) ............................................................22

*Price v. Thompson*, 380 F.3d 209 (4th Cir. 2004) ..............................................................28

*Smith v. First Union National Bank*, 202 F.3d 234 (4th Cir. 2000)............................22, 24

*U.S. Equal Employment Opportunity Comm'n v. Maryland Ins. Admin.*,
  879 F.3d 114 (4th Cir. 2018) ...........................................................................................15

Plaintiff Valeria Ramundo Orlando ("Ms. Ramundo Orlando"), by and through counsel, and pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56, submits this Memorandum in Opposition to the Motion for Summary Judgment filed by Defendant Rare.  Summary judgment should be denied as to Ms. Ramundo Orlando's claims for gender discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*., and under the Equal Pay Act, 29 U.S.C. § 206(d) (Counts One through Three of the Amended Complaint).

## SUMMARY OF ARGUMENT

Plaintiff Valeria Ramundo Orlando is a highly regarded international finance expert and joined Defendant Rare as VP of Blended Finance in 2018.  Ms. Ramundo Orlando began experiencing persistent discrimination from her supervisor, Dale Galvin, which she verbally complained about to Rare's VP of Talent and Director of Recruiting.  Mr. Galvin would make demeaning remarks regarding women in the workplace, repeatedly dismiss and belittle female employees as being unattractive, emotional, characterless, etc., criticize female employees as being incapable or unintelligent, and terminated female employees without basis.  Instead of addressing these concerns, Rare told Ms. Ramundo Orlando that she risked retaliation if she made a formal complaint against Mr. Galvin and advised her to attempt to resolve her conflict with Mr. Galvin informally.  Rare's CEO, Brett Jenks, soon thereafter  began requiring Ms. Ramundo Orlando to attend weekly meetings with him in which he and three other male executives would criticize Ms. Ramundo Orlando's work.  Mr. Jenks further required Ms. Ramundo Orlando to present to the group without regard to her international travel schedule, causing her significant stress.

1

When Ms. Ramundo Orlando made a written complaint about Mr. Galvin in the fall of 2019, Rare's retaliation was swift.  Rather than investigate her complaint – the second formal complaint made against Mr. Galvin by a female executive – Mr. Jenks, and VP of Talent, Caryn Perrelli, made a collective decision to not investigate Ms. Ramundo Orlando's complaints (despite having already retained attorneys to investigate the same employees at no cost to the organization), to delay any substantive response to her allegations, and to take no corrective action against Mr. Galvin.   Instead, Rare made the decision to terminate Ms. Ramundo Orlando – the complainant – rather than Mr. Galvin because Mr. Jenks valued Mr. Galvin for "his service and productivity."   This occurred even as Mr. Jenks was advised by his SVP, Steve Box, to address Ms. Ramundo Orlando's concerns and to try to retain her for the good of the organization.  Rare did not consider terminating Mr. Galvin at any point despite having received two formal complaints about him from women or require Mr. Galvin to undergo corrective training, despite finding that both Ms. Ramundo Orlando and Mr. Galvin were not accepting responsibility for their actions.

Instead, Rare placed Ms. Ramundo Orlando on leave, directed Ms. Ramundo Orlando to cancel her travel plans, and pretextually terminated Ms. Ramundo Orlando based on the false claim that she had violated an agreement with Rare to not attend a conference as a Rare representative.  At the same time, Rare helped Mr. Galvin in setting up a lucrative fund management company with Rare's financial assistance.

Genuine issues of material fact exist as to all of Ms. Ramundo Orlando's claims.  Based on these facts, a jury could easily find that she was discriminated against at Rare, subject to hostile treatment at work, treated differently than Mr. Galvin, and that the reasons given for her

termination are pretextual.  Ms. Ramundo Orlando, therefore, by counsel, respectfully requests that Defendant's motion for summary judgment be denied in its entirety.

**STATEMENT OF MATERIAL FACTS[1]**

The paragraphs below correspond to those in the Statement of Undisputed Material Facts ("Def. SOF") in Rare's Memorandum in Support of Motion for Summary Judgment ("Df. Mem.").

1.  **Undisputed.**

2.  **Undisputed.**

3.  **Undisputed.**

**Equal Pay Act Violation**

4.  **Undisputed.**

5.  **Undisputed.**

6.  **Undisputed.**

7.  **Undisputed.**

8.  **Disputed** that this was the basis for the increase**.**  Mr. Galvin told Ms. Ramundo Orlando when hired she would receive a raise since they could not pay her what she requested when hired and because of her performance.  **Att. 19**, Ramundo Orlando Decl., ¶ 11

9.  **Disputed** as Plaintiff did not have access to change the budget or approve**. Att. 19**, Ramundo Orlando Decl., ¶ 12.

10.  **Undisputed** there was an increase.  Disputed this was the basis**.** *See* ¶ 8 above

11.  **Disputed** as to the salaries**.**

---

[1] Herein referred to as "SOMF."

3

12.    **Disputed** in the Plaintiff did not have access to the budget and did not approve spending against the budget or give monthly forecasts.   **Att. 19**, Ramundo Orlando Decl., ¶ 13.

13.    **Disputed** – *see* ¶ 12 above**.**

14.    **Disputed** – *see* ¶ 12 above.

15.    **Undisputed**.

16.    **Undisputed**.

17.    **Undisputed.**

18.    **Undisputed.**

19.    **Undisputed.**

20.    **Undisputed.**

21.    **Disputed.**

22.    **Undisputed.**

23.    **Disputed.** Manuel Bueno Vera was a Director at Rare at the time Ms. Ramundo Orlando was hired.  Mr. Bueno Vera was a subordinate to and junior to Ms. Ramundo Orlando, but was paid more.  Mr. Bueno Vera earned an annual salary of $$176,300.16 and received a performance bonus in December 2019 in the amount of $12,833, as compared to Ms. Ramundo Orlando's $160,000 salary and $5,000 signing bonus.  **Att. 20**, Bueno Vera Decl. ¶¶ 2-5; **Att. 19**, Ramundo Orlando Decl., ¶¶ 2-3, ¶ 5.

24.    **Undisputed** as to Mr. Webb's position, but a genuine issue of material fact exists as to whether Rare intentionally paid male employees more than female employees.  In 2018, Mr. Webb earned a base salary of $190,000 with a $5,000 signing bonus, and was further entitled to a 15% bonus.   Ms. Ramundo Orlando was more senior to Mr. Webb and worked in the same

group reporting to Dale Galvin, but earned only $160,000 with a $5,000 signing bonus.  **Att. 19**, Ramundo Orlando Decl. at ¶¶ 4-5.

25.     **Disputed – Tax filing, Att. 21** at p. 45**;** Gerald Miles was an employee.

**Plaintiff Exhausted Administrative Remedies on Pay Discrimination Claim**

26.     **Undisputed.**

27.     **Disputed in Part.**  Roughly eight weeks after the email Defendant attaches, on August 31, 2020, the EEOC issued its Right-To-Sue letter, closing the administrative process and giving Ms. Ramundo Orlando 90 days to file suit.  *See* Right-To-Sue Letter, **Att. 1**.

**Gender Discrimination**

28.     **Undisputed.**

29.     **Undisputed.**

30.     **Undisputed.**

31.     **Undisputed.**

**Harassment**

32.     **Disputed in Part.**  Plaintiff also testified that Mr. Galvin made a comment that he could find a girlfriend easier in the Philippines because the women would want to keep him; and that Mr. Galvin commented on her dress and the dress of other women.  Dep. of Valeria Ramundo Orlando ("Pl. Dep"), **Att. 2**, at 178:8-179:10.

33.     **Undisputed**.

34.     **Undisputed**.

35.     **Undisputed**, but Plaintiff also consider other conduct to be harassment, including the treatment she received from Mr. Jenks.  *Id.* at 173:9-179:10.

36.     **Undisputed**.

5

37.     **Disputed**.  Plaintiff also identified, "the constant berating, constant humiliating, the constant belittling about the fact of not just me but of every woman that was around him."  *Id.* at 173:16-18.

38.     **Undisputed**.

39.     **Undisputed**.

40.     **Undisputed.**

41.     **Disputed** as Ms. Schweigart spoke to Ms. Ramundo Orlando about harassment. *Id.* at 119:14-121:5.

42.     **Undisputed**.

43.     **Undisputed**.

44.     **Undisputed**.

45.     **Undisputed**.

46.     **Undisputed**.

47.     **Undisputed** as to how Ms. Miller testified.

48.     **Undisputed**.

49.     **Undisputed**, but Plaintiff also consider other conduct to be harassment, including the treatment she received from Mr. Jenks.  *Id.* at 173:9-179:10.

50.     **Undisputed**.

51.     **Undisputed**, but Plaintiff also testified that Mr. Galvin would give Ms. Ramundo Orlando's team demeaning tasks and devalue them.  *Id.* at 132:21-134:2.

52.     **Undisputed**.

53.     **Undisputed**.

**Investigation Initiated by Ms. Ramundo Orlando's Concerns about Dale Galvin**

54.     **Undisputed**.  Mr. Galvin was aware of Ms. Ramundo Orlando's complaints when he raised the Jenny Miller issue.  Mr. Galvin responded by disclosing a complaint against Ms. Ramundo Orlando by his assistant, Jenny Miller, regarding an incident that took place over seven weeks prior.  *See* Email from D. Galvin to C. Perrelli, Oct. 3, 2019, **Att. 3**; Dep. of Dale Galvin ("Galvin Dep."), **Att. 4**, at 89:11-18 (Q: Why did you decide to forward this e-mail to Ms. Perrelli at this time?  **A: I think because it was a need to collect relevant data to respond to the issues that were going on.)**; Dep. of Caryn Perrelli ("Perrelli Dep."), **Att. 5**, at 52:14-53:12.

55.     **Disputed**.  Ms. Ramundo Orlando denied Ms. Miller's version of the events and several of Ms. Miller's allegations were found to be unsubstantiated.  Orrick Rep., **Att. 6**, at 9-12 and 14-15.[2]  The email was an attempt by Ms. Miller to curry favor from her supervisor who had been treating Ms. Ramundo in discriminatory manner in the workplace.

56.     **Disputed**.  Mr. Galvin did not find the complaint significant enough to forward to Talent.  In fact, Mr. Galvin never put in writing nor outlined to Ms. Ramundo Orlando in writing that there were any complaints against her.  Galvin Dep., **Att. 4**, 98:4-14.

57.     **Undisputed**.

58.     **Disputed.**  Mr. Galvin sent Jenny Miller's email to Ms. Ramundo Orlando – *twice* - to let her know she "had been warned:" and he never contacted her to say he sent the email by accident.   Pl. Dep., **Att. 2,** at 166:8-16.

---

[2]Although marked as "Confidential," counsel for Rare has removed the "Confidential" designation from RARE_000149-184 (Att. 6), and therefore Attachment 6 is not being filed Under Seal.

59.     **Disputed.**  According to Ms. Perrelli, the allegations raised by Ms. Miller were not the cause of the investigation.

Q:     What is your understanding of what led to the investigation?
A:     What led to the investigation were Valeria's concerns relative to Dale and, you know, Valeria's concerns with regard to Dale and her desire to work -- to report to someone else because she felt that he had -- you know, he did not understand the work that she -- he didn't understand blended finance, that the requests that he was making of her were administrative in nature and burdensome on her team and so there was a great deal of workplace tension as a function of that. So we had that issue and then we had the concerns that were raised by Jenny Miller regarding Valeria.

Perrelli Dep., **Att. 5**, at 52:14-53:7.

60.     **Disputed.**  Following Ms. Ramundo Orlando's statement that Ms. Miller's accusations were "defamation" and legal counsel would be retained to handle Ms. Miller's accusations, Ms. Perrelli told Ms. Ramundo Orlando that Rare was engaging a third party to investigate the issues, **Att. 7**.  Ms. Ramundo Orlando's complaints led to the investigation. *See* ¶ 59 above.

61.     **Undisputed.**

62.     **Undisputed**.

63.     **Disputed.**  Admitted that Ms. Ramundo Orlando provided the draft email during the investigation but disputed that it was not a claim of gender discrimination.  When Ms. Ramundo Orlando made an "official" complaint to Ms. Perrelli in August 2019 that Mr. Galvin was discriminating and harassing her due to her gender, Ms. Perrelli responded that she should not put anything in writing.  *See* Pl. Dep. **Att. 2**, at 197:7-198:12.  Ms. Ramundo Orlando prepared a statement to Ms. Perrelli at the time, but shared it only with Mr. Bueno out of fear of retaliation.  *Id.* at 198:3-200:14; *see also* email from Ms. Ramundo Orlando, **Att. 8**.

64.     **Undisputed** that Mr. Jenks sent the email.

8

65.     **Disputed**.  Plaintiff had previously complained of discrimination.  When Ms. Ramundo Orlando made a verbal complaint to Ms. Perrelli in August 2019 that Mr. Galvin was discriminating and harassing her due to her gender, Ms. Perrelli responded that she should not put anything in writing.  *See* Pl. Dep. **Att. 2**, at 197:7-198:12.

66.     **Disputed.**  Seven (7) days after receiving Ms. Ramundo Orlando's November 4, e-mail, and without conducting any investigation of her November 4 claims, Mr. Jenks and Ms. Perrelli came up "options" for Ms. Ramundo and Mr. Galvin.  *See* Email from C. Perrelli to B. Jenks, **Att. 9**, at 2.  There was no investigation of the Nov. 4 claims even though Mr. Jenks and Ms. Perrelli claimed it was the first time they had heard Ms. Ramundo Orlando's specific claims in the letter.  Jenks Dep., **Att. 10**, at 82:7-83:5; Perrelli Dep., **Att. 5**, at 61:21-64:12.  By November 15, 2019, Rare had not even responded to Ms. Ramundo Orlando's Nov. 4 complaint.  Email from B. Jenks to C. Perrelli, **Att. 16**.

Two of the three options proposed that Ms. Ramundo Orlando would be immediately terminated.  *Id.* None of the options involved the termination of Mr. Galvin.  *Id.*  Mr. Jenks rejected the idea terminating Mr. Galvin because Mr. Jenks valued Mr. Galvin for "his service and productivity."  Dep. of Brett Jenks ("Jenks Dep."), **Att. 10**, at 93:18-22.  In fact, Rare was already in talks with Mr. Galvin regarding funding for Mr. Galvin to start a private management fund, Deliberate Capital, through which Rare would pay the Deliberate Capital "north of a million dollars" to run Rare's lucrative Meloy fund.  *Id.* at 16:5-19 (Galvin owns Deliberate Capital and is paid more than $1 million to manage the fund); 33:12-34:2 (fund deploys $23 million) and 26:16-28:4; Galvin Dep., **Att. 4**, at 56:11-19 (Galvin reached an agreement with Rare to invoice immediately (before any work was done) to cover deliberate Capital's expenses, overhead and

9

salaries); and Galvin Dep, **Att. 4**, at 46:8-15 (prior to October 2020, Galvin was in talks with Rare to start his own company).

At the time Mr. Jenks was presiding over the above options, his only training on discrimination, harassment and retaliation was an annual, roughly one-hour, online course that he could not specifically recall taking any year prior to 2020, and that packed a plethora of employment issues into roughly 60 minutes.  Jenks Dep., **Att. 10**, at 64:12-66:20.

67.      **Undisputed**.  Even though this was Mr. Galvin's second time being accused of inappropriate behavior with a female subordinate (*see* **Att. 11**), Mr. Galvin and Ms. Ramundo Orlando were required to undertake the same actions.  Even though this was the second time Mr. Galvin had been accused of inappropriate behavior with a female employee, Mr. Jenks never recommended that Mr. Galvin take any training on discrimination, harassment, or retaliation as a result of the investigation.  Jenks Dep., **Att. 10**, at 99:3-19.

**Plaintiff Was Placed on Administrative Leave and Terminated**

68.      **Undisputed.**

69.      **Undisputed.**

70.      **Undisputed.**   It is up to the Company, not the Plaintiff, to decide whether to conduct an investigation of her November 4, 2019 discrimination allegations – and Rare did not ask its counsel, who was working for free, or Talent (HR), to investigate.  Perrelli Dep., **Att. 5**, at 72:10-13; Jenks Dep., **Att. 10**, at 85:2-86:4;

71.      **Undisputed**.

72.      **Undisputed**.

73.      **Undisputed**.  Ms. Ramundo Orlando subsequently complained to Ms. Perrelli that Rare was forcing her to repent or apologize for complaining about gender discrimination,

**Att. 12**.  Rare made no changes to its course of conduct and had no concerns that it was

responding in a retaliatory manner.  Perrelli Dep., **Att. 5**, at 87:5-88:1.

74.      **Undisputed** that Mr. Galvin wrote the reflection.  However, Ms. Perrelli also

concluded, in October 2019, that despite giving Mr. Galvin some "straight talk," "an

assessment of where things stood and ALOT [sp] of personal feedback," Mr. Galvin was not

"accepting full responsibility for these various matters…"  **Att. 13**.  Mr. Jenks admitted that

Mr. Galvin's rebuttal to his performance evaluation, "might have given [him] a little concern"

that Mr. Galvin might not be accepting full responsibility.  Jenks Dep., **Att. 10**, at 115:19-

116:6.

75.      **Undisputed**.  Mr. Galvin was never placed on any kind of leave, removed from

the workplace or terminated.  In fact, he was given the opportunity to run the lucrative Meloy

fund.  *See* ¶ 66 above.

76.      **Undisputed** that the review states this.

77.      **Disputed** that the reason for termination was not receiving the reflection.

Undisputed that Ms. Ramundo Orlando was terminated and had requested more time to provide

the reflection.

78.      **Undisputed** that a portion of the email is contained in this paragraph.

79.      **Undisputed.**

80.      **Disputed.**  Plaintiff agrees that she was on travel and requested additional time.

Ms. Ramundo Orlando told Mr. Jenks she wanted to give the statement consideration, respond

with personal intent, and not superficially.  Jenks Dep., **Att. 10**, at 119:11-14.  Mr. Jenks was

angered by Ms. Ramundo Orlando's complaints and that she had retained an attorney regarding

her complaints.  Mr. Jenks became aware that Ms. Ramundo Orlando was consulting an attorney

11

and stated he would terminate her simply for having an attorney.  *See* Email from B. Jenks to C. Perrelli dated November 13, 2020, **Att. 14.**  ("If she is going to keep lawyers lingering on the sidelines of all of our discussions, I am going to want to find an amicable way to exit her.") Mr. Jenks wanted to separate Ms. Ramundo Orlando after she complained and before he put her on administrative leave, and made this decision despite advice from his SVP, Steve Box, to try to retain Ms. Ramundo Orlando by addressing her concerns.  **Att. 18**.  On November 12, 2022, Rare considered three options for resolving the conflict between Plaintiff and Mr. Galvin; two of the three options involved terminating Plaintiff's employment, but none of the options considered terminating Mr. Galvin. **Att. 9** at 2.

Rare reached this decision even though Mr. Galvin had been the subject of at least one previous investigation, which was prompted by complaints of abusive treatment made by another female executive.  **Att. 11**.  Rare also reached this conclusion despite explicitly recognizing that Mr. Galvin used Ms. Miller's complaint in a "defensive manner" – that is, in a retaliatory manner – while also recognizing that Plaintiff "sincerely believe[d] that [she was] trying to protect [her] team and do what is best for them…" **Att. 9** at 4.  Mr. Jenks told the Mr. Galvin with respect to Ms. Ramundo Orlando that he had "let her go" weeks before she had been terminated. *See* Jenks Dep., **Att.10**, at 125:16-127:6.

81.     **Disputed.**  The email Mr. Jenks sent said the leave was based on Ms. Ramundo Orlando's "actions."  While she had not provided the statement, she had also complained of discrimination and retaliation.

82.     **Undisputed.**

83.     **Undisputed.**  There is no dispute Rare registered Ms. Ramundo Orlando, paid

for Ms. Ramundo Orlando and that prior to her complaints to Rare, she was to speak at the

conference on Rare's behalf.  *See* Ramundo Orlando Decl., **Att. 19**, at ¶ 6.

84.     **Disputed.**  Ms. Schweigart could not have observed Plaintiff wearing a RARE

badge.  Ms. Ramundo Orlando wore a badge from a different company, a consulting company

she owned, "Greensquare Ventures."  **Att. 15**.  Ms. Ramundo Orlando was permitted to be at

the conference but was instructed not to represent Rare.  Perrelli Dep., **Att. 5**, at 98:7-11.

Rare never bothered to contact Ms. Ramundo Orlando to confirm that she was in attendance

without holding herself out at Rare – as the parties had agreed – despite the fact that Ms.

Ramundo Orlando was still a Rare employee. *Id.* at 101:8-14.  There were three Rare employees

in attendance at the conference, but Rare did not contact any of the employees in attendance to

inquire what Ms. Ramundo Orlando's affiliation was or what her badge said.  *Id.* at 101:19-

102:5 and 102:11-103:18.  In fact, while at the conference and wearing her Greensquare

Ventures identification badge, Ms. Ramundo Orlando exchanged a greeting with a Rare

employee, Molly Bradtke, crossed paths with Ms. Bradtke several times over the course of

the three day conference while Ms. Bradtke was close enough to see Ms. Ramundo Orlando's

identification badge.  Ramundo Orlando Decl., **Att. 19**, at ¶ 8.

Then, on the second day of the conference Ms. Ramundo Orlando was standing near

the threshold of the conference room door when Ms. Schweigart walked right in front of her,

with Ms. Ramundo Orlando's badge in her line of sight. *Id.* at ¶ 9.  In addition, the

conference room where Rare did its presentation was a small room, and Ms. Ramundo

Orlando sat at a table, across from Ms. Bradtke and another member of the Blended Finance

Team, Harry Sudewa, with her badge visible to them at all times. *Id.* at ¶ 10.  Logically, Ms.

Ramundo Orlando obtained Rare's permission to attend the conference because she was registered through Rare – something Ms. Perrelli never bothered to check prior to terminating Ms. Ramundo Orlando. Perrelli Dep., **Att. 5**, at 101:3-7 (no knowledge of how Ms. Ramundo Orlando was registered).

85.      **Disputed** at to Rare's stated reason for termination. Rare never told Ms. Ramundo Orlando that she was terminated, but terminated her of access to her work email and work files while she in the airport returning from an overseas conference, which then denied her of access to her TSA confirmation. Pl. Dep., **Att. 2**, at 38:19-39:16. Ms. Ramundo Orlando's forced leave came just shy of four months after her "official" complaint in August 2019. She never returned to the office after being placed on leave and was terminated two months later.

## STANDARD OF REVIEW

Summary judgment is only appropriate when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party has the burden of establishing the basis for its motion and identifying the evidence which demonstrates the absence of a genuine issue of material fact. *Id.* Once the moving party satisfies this burden, the opposing party may proffer evidence showing a genuine dispute of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The facts and all justifiable inferences should be considered in favor of the non-moving party, *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013), and courts cannot resolve disputed facts, weigh the evidence, or make credibility determinations, *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015).

"A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

## ARGUMENT

**I.   EQUAL PAY ACT**

"The Equal Pay Act requires employers to pay employees of both sexes equally when they perform substantially equal work." *Brinkley-Obu v. Hughes Training*, 36 F.3d 336, 353 (4th Cir. 1994).  For purposes of the Equal Pay Act, equal work means "substantially equal" and not "identical."  Minor or insubstantial differences in the jobs will not cause work performed by males and females to be unequal.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 203, n. 24, 94 S.Ct. 2223, 2232, n. 24, 41 L.Ed.2d 1 (1974); *Brennan v. Prince William Hospital Corp.*, 503 F.2d 282, 290 (4th Cir. 1974); *Hodgson v. Fairmont Supply Co.*, 454 F.2d 490, 493-4 (4th Cir. 1972).  To state a claim under the Equal Pay Act, a plaintiff must allege that "(1) the defendant-employer paid different wages to an employee of the opposite sex (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions." *U.S. Equal Employment Opportunity Comm'n v. Maryland Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018).  Discriminatory intent is not an element of an EPA claim. *Brinkley-Obu v. Hughes Training*, 36 F.3d at 345 n.17 (4th Cir. 1994).

As an initial matter, a plaintiff is not required to file a charge of discrimination or administratively exhaust a claim with the EEOC prior to filing a claim of for the violation of the Equal Pay Act. *Earl v. Norfolk State Univ.*, Civil No.: 2:13cv148, at *23 n.4 (E.D. Va. 2014) (citing *Cnty. of Wash., v. Gunther*, 452 U.S. 161, 175 n.14 (1981)) ("[T]he Equal Pay Act . . . has no requirement of filing administrative complaints and awaiting administrative conciliation

15

efforts.")  Defendant's position that Ms. Ramundo Orlando was required to exhaust administrative remedies as to her EPA claims is without merit.

Here, Ms. Ramundo Orlando is able to show that she was paid *less* than her male subordinates in the same business unit, which is sufficient to create a genuine issue of material fact as to whether Rare willfully violated the EPA.  *Emswiler v. Great Eastern Resort Corp.*, 602 F. Supp. 2d 737, 743 (W.D. Va. 2009) (genuine issue existed "in light of evidence that there was a pattern of pay disparities between male and female employees, that the plaintiff's employer knew her work was superior to others yet her salary was not commensurate with her performance, and that **one of the plaintiff's subordinates was paid more than she was**") (emphasis added).  At the time of her hire, Ms. Ramundo Orlando was paid $160,000, with a sign-on bonus of $5,000, to create and oversee a Blended Finance team as a Vice President.  She would later learn that Manuel Bueno Vera and David Webb, both Directors reporting to Mr. Galvin and Ms. Ramundo Orlando's subordinates, earned more than she did.  **Att. 19, Att. 20.** Mr. Bueno Vera earned an annual salary of $176,300.16 and received a performance bonus in December 2019 in the amount of $12,833.  Bueno Vera Decl., **Att. 20, ¶¶ 3-4.**  Mr. Webb earned a base salary of $190,000 with a $5,000 signing bonus, and was further entitled to a 15% bonus. Ramundo Orlando Decl., **Att. 19**, ¶ 4.

Mr. Galvin and Rare were aware of these pay disparities and were further aware that Ms. Ramundo Orlando had significantly greater responsibilities and experience than Mr. Vera or Mr. Webb in her role as VP of Blended Finance.  Mr. Galvin agreed during Orrick's investigation that there was "nobody else currently employed by Rare who could lead the Blended Finance team."  **Att. 6**, at 7.  Rare nonetheless willfully paid Ms. Ramundo Orlando less than a Director

on her own team.  On these facts, Defendant's motion for summary judgment should therefore be denied.

## II.    GENDER DISCRIMINATION AND HARASSMENT

A plaintiff can prove Title VII unlawful discrimination in one of two ways: <u>either</u> with direct evidence <u>or</u> through the "prima facie" method (also called "burden shifting" or the *McDonnell Douglas* framework).  First, in the "direct" method, a plaintiff can provide (1) direct or indirect evidence of intentional discrimination (2) against plaintiff for belonging to a protected class, which motivated (3) an adverse employment action. *E.g., Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir.2004). "Direct evidence may include ... statements by an employee's supervisors that are generally discriminatory or statements by supervisors that indicate that their actions were motivated by the employee's race or sex, or in retaliation against filed EEOC claims .... Courts routinely consider indirect evidence to be tantamount to circumstantial evidence." *Lee v. Wade*, No. 3:15CV37, 2015 WL 5147067, at *3 (E.D.Va. 2015).

Second, "in the absence of [direct] evidence, a plaintiff may prove unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Lee*, 2015 WL 5147067, at *3. "To establish a prima facie case of race discrimination under *McDonnell Douglas*, a plaintiff must demonstrate '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015).  Once a plaintiff makes the prima facie case, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection,"

after which the plaintiff must "be afforded a fair opportunity to show that petitioner's stated reason for respondent's rejection was in fact pretext." *McDonnell Douglas*, 411 U.S. at 802-04, 93 S.Ct. 1817.

In this case, Defendant disputes only the third element under both the "direct" or the *McDonnell Douglas* burden-shifting framework. Defendant cannot reasonably dispute that Ms. Ramundo Orlando is a member of a protected class and does not address whether Ms. Ramundo Orlando had satisfactory job performance or whether she was treated differently from similarly situated employees outside of the protected class.

### A. Ms. Ramundo Orlando Suffered Many Adverse Actions as a Result of Gender Discrimination Throughout her Employment

In arguing that Plaintiff did not suffer any adverse employment actions while employed by Rare, Defendant artificially limits the actions that can be considered of adverse actions under a gender discrimination claim. The evidence shows that Ms. Ramundo Orlando, like many other female Rare employees, was subjected to increased scrutiny, limited professional opportunities, and disparate discipline as compared to her male peers throughout her employment.

Under Title VII, an adverse action "materially alter[s] the terms, conditions, or benefits of employment," resulting in discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Jeffers v. Thompson*, 264 F.Supp.2d 314, 329 (D. Md. 2003). In this case, Ms. Ramundo Orlando was required to attend weekly meetings in which her performance was criticized by Dale Galvin and Rare's CEO, Brett Jenks, which had a material and detrimental impact to her ability to lead and progress in the organization; she was subjected to constant belittling, micromanagement, and bullying, which again negatively impacted her ability to lead and progress at Rare; SOMF ¶¶ 49 and 51; and was placed on administrative leave following her complaint that she and her team were subjected to

18

gender discrimination, while the subject of her complaints remained fully employed and in a position of leadership.

Rare also selectively enforced work policies for the benefit of male employees and to the detriment of female employees, such as by requiring Ms. Ramundo Orlando to relocate to Arlington, Virginia upon hire but permitting Gerald Miles, VP for Global Development, to work remotely from Australia, SOMF ¶ 25; Rare also condoned Mr. Galvin's decision to base a new male hire in Manila, rather than Jakarta, so that the hire could find a girlfriend more easily. These actions were materially adverse, affected the terms and conditions of Ms. Ramundo Orlando's employment, and constitute actionable discrimination.

**B.   Ms. Ramundo Orlando was Treated Differently From Similarly Situated Employees Outside of the Protected Class**

Although Defendant does not address this fourth element, the evidence also shows that Rare disciplined female employees – and Ms. Ramundo Orlando in particularly – more harshly than male employees.  Rare elected to retain a male employee over Ms. Ramundo Orlando despite both being found to be equally at fault for a difficult work environment.  Rare likewise treated employee complaints about women far more seriously than employee complaints about men; in his deposition, Mr. Jenks testified that he viewed Ms. Miller's complaint regarding Ms. Ramundo Orlando as a "serious complaint," but did not give the same weight to Ms. Ramundo Orlando's complaints regarding Mr. Galvin.  SOMF ¶ 66. (finding that Ms. Ramundo Orlando's complaints were "[n]ot necessary to further investigate.")

It is particularly telling that, following the conclusion of Rare's investigation, Rare considered three options for resolving the conflict between Plaintiff and Mr. Galvin; two of the three options involved terminating Plaintiff's employment, but none of the options considered terminating Mr. Galvin.  SOMF ¶ 66.  Rare reached this decision even though Mr. Galvin had

been the subject of at least one previous investigation, which was prompted by complaints made by another female executive, Michelle Kang; in comparison, Ms. Ramundo Orlando had never been previously investigated.  SOMF ¶ 67.  Rare also reached this conclusion despite explicitly recognizing that Mr. Galvin used Ms. Miller's complaint in a "defensive manner" – that is, retaliatory manner – while also recognizing that Plaintiff "sincerely believe[d] that [she was] trying to protect [her] team and do what is best for them…"  **Att. 9** at 4.  Rare's VP of Talent, Caryn Perrelli, also concluded in October 2019 that despite giving Mr. Galvin some "straight talk," "an assessment of where things stood and ALOT [sp] of personal feedback," Mr. Galvin was not "accepting full responsibility for these various matters…"  SOMF ¶ 74.  Rare ultimately claimed to have terminated Ms. Ramundo Orlando, but not Mr. Galvin, for the exact same reason:  a perceived failure to accept responsibility Rare's decisions.  The decision to terminate Ms. Ramundo Orlando, rather than Mr. Galvin, was discriminatory.

### C.   Rare's Stated Reasons for Suspending and Terminating Ms. Ramundo Orlando Are Pretextual

Finally, is worth noting that Rare decided to terminate Plaintiff's employment *before* Plaintiff failed to submit a self-assessment, and well before Plaintiff attend the OECD conference, **Att. 17**.  Mr. Jenks was upfront that he wished to terminate Ms. Ramundo Orlando in early November 2019 upon reviewing Orrick's investigation report.  *Id.*  Mr. Jenks reiterated that he wished to terminate Ms. Ramundo Orlando for retaining counsel to advise her regarding her employment situation, and again stated to Mr. Galvin that Ms. Ramundo Orlando was terminated while she was on administrative leave.  *See* Statement of Material Facts ("SOMF") above, ¶ 81.  Mr. Jenks continued to protect Mr. Galvin at Ms. Ramundo Orlando's expense despite advice from his SVP, Steve Box, to address Ms. Ramundo Orlando's complaints and to try to retain her for the good of the organization.  **Att. 19**.  At no point in time did Rare or Mr.

Jenks consider terminating Mr. Galvin, despite the report's conclusion that he was equally responsible for the difficult work environment within his group; instead, Rare collaborated with Mr. Galvin on starting a private management fund while developing a plan to terminate Ms. Ramundo Orlando.

Defendant's claims that Rare decided to terminate Plaintiff's employment in response to her attendance at the OECD conference is therefore not credible.  Rare's claim now that Plaintiff was terminated for attending a prescheduled overseas conference is refuted by Rare's own "talking points" for Mr. Jenks from November 2019, **Att. 17**.  Furthermore Ms. Ramundo Orlando attended the conference wearing a badge identifying herself as a representative of her consulting company, Greensquare Ventures, **Att. 15**.  Rare did not directly ask Ms. Ramundo Orlando if she was holding herself out as a Rare representative, nor did Rare confirm with any of the Rare employees present if Ms. Ramundo Orlando was presenting herself as a Rare employee. SOMF ¶¶ 85.  Had Rare done so, Rare would have been able to confirm that Ms. Ramundo Orlando did not violate her agreement with Rare.  Ms. Ramundo Orlando's termination had been decided long before she attended the conference, and Rare's use of the conference to justify her termination is pretextual.

There remain significant issues of material fact as to whether Rare discriminated against Ms. Ramundo Orlando on the basis of her gender, whether Ms. Ramundo Orlando was treated less favorably than her male peers, and whether Rare's justifications for Ms. Ramundo Orlando's termination are pretextual.  Summary judgment should be denied as to this claim.

**III.    HOSTILE WORK ENVIRONMENT**

A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult... that is sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).  In *Boyer–Liberto v. Fontainebleau Corp.,* the Fourth Circuit listed the four elements a plaintiff must show to prevail in a hostile work environment claim: "(1) unwelcome conduct; (2) that is based on the plaintiffs [protected status]; (3) which is sufficiently severe or pervasive to alter the plaintiffs conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Okali v. City of Bait*, 648 F.3d 216, 220 (4th Cir. 2011)).  Defendant appears to dispute the second and third elements.

To prove the second element of a gender-based hostile work environment claim, that the offending conduct was based on sex, Plaintiffs need not show they were "subjected to sexual advances or propositions," but to prevail must prove they were "the individual target of open hostility because of [their] sex." *Id.* (emphasis added) (*citing Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242-43 (4th Cir. 2000)). Therefore, Plaintiffs must prove that "but for the[ir] ... gender, [they] would not have been the victim[s] of the discrimination." *Smith*, 202 F.3d at 242. Ms. Ramundo Orlando has testified that Mr. Galvin's hostile conduct was directed exclusively at women, including Mr. Galvin's repeated statements that he believed women to be not capable or intelligent; micromanaging and redirecting female employees; demanding that female employees be present in the office whenever he was; and many demeaning statements regarding female employees' appearance, childcare responsibilities, and role as wives or girlfriends.  Similarly, Rare paid female employees less, tolerated abusive behavior against women, and enforced its policies on remote work and relocation against female employees but in favor of male employees.  The record shows that female employees were targeted for abuse at Rare, and that other female employees besides Ms. Ramundo Orlando complained as such.

As to the third element, for misconduct to be severe or pervasive, the work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).  In making this determination, the Court must "examine the totality of the circumstances, including [t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance*." Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996). "

Here, Ms. Ramundo Orlando was subjected to weekly abuse; she was required to attend weekly sessions – regardless of her travel schedule – where her work was criticized by four male executives, and endured bullying to the point that she was physically frightened to sit at her own desk or to be around Mr. Galvin.  This conduct was demonstrably objectively offensive, as Rare investigated similar complaints by another female executive, Melissa Kang, well before Ms. Ramundo Orlando's termination.  This conduct also unreasonably interfered with Ms. Ramundo Orlando's work performance, as she and her employees were continually redirected, harassed, and bullied into performing non-essential and counterproductive tasks for Mr. Galvin to the detriment of their own work.  Rare's demand that Ms. Ramundo Orlando attend performance review sessions regardless of her international travel plans was also extremely disruptive, physically demanding, and caused her stress and exhaustion.  This hostile work environment culminated in Ms. Ramundo Orlando's formal complaints, leading to her suspension and termination.

[A] woman's work environment can be hostile even if she is not subjected to sexual advances or propositions…A work environment consumed by remarks that intimidate, ridicule, and maliciously demean the status of women can create an environment that is as hostile as an environment that contains unwanted sexual advances."  *Smith v. First Union National Bank*, 202 F.3d 234, 242 (4th Cir. 2000) (internal citations omitted). There remains a genuine issue of material fact as to whether Plaintiff was subjected to a hostile work environment at Rare, and summary judgment should be denied as to this count.

## IV.    RETALIATION

Title VII forbids employment discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a), and its anti-retaliation provision serves to "prevent[ ] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 63, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); 42 U.S.C. § 2000e–3(a).  In order to establish a prima facie Title VII retaliation claim, a plaintiff must demonstrate three elements: "(1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." *Boyer–Liberto,*786 F.3d 264, 281 (4th Cir. 2015) (internal quotation marks omitted). The evidentiary record shows ample evidence to support all three of these elements.

### A.    The Evidence Shows Ms. Ramundo Orlando Engaged in Protected Activity

First, Plaintiff's many attempts to complain about Dale Galvin's conduct qualify as protected activity under well-established law.  The Fourth Circuit has recognized that it takes "an expansive view of what constitutes oppositional conduct, recognizing that [protected activity] encompasses utilizing informal grievance procedures as well as staging informal protests and

voicing one's opinions in order to bring attention to an employer's discriminatory activities…
Thus, an employee is protected when she opposes not only ... employment actions actually
unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful,
and the Title VII violation to which the oppositional communication is directed may be
complete, or it may be in progress." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir.
2015) (internal citations and quotations omitted.)

In this case, Ms. Ramundo Orlando complained repeatedly to Rare that Mr. Galvin
discriminated against female employees, including Mr. Galvin's repeatedly expressed opinion
that female employees were incapable, inarticulate, and unintelligent; Mr. Galvin's termination
of female employees based on his opinion that they were not performing adequately when all
objective metrics showed that they were; Mr. Galvin's disparaging comments regarding
childrearing and the appearance of female employees; Mr. Galvin's comments that implied that
women had value only as wives or girlfriends; and feeling physically intimidated by Mr. Galvin
to the point where Plaintiff was uncomfortable sitting at her own desk and waited hours in a
conference room until Mr. Galvin left so that she could retrieve her handbag without speaking
with him.  These complaints were all based on Ms. Ramundo Orlando's reasonable belief Mr.
Galvin's conduct was unlawful and were directed to Rare's VP of Talent and Director of
Recruitment in the summer and fall of 2018 (that is, well before Rare conducted its investigation
based on Ms. Miller's complaint about Plaintiff.)

In response, Ms. Ramundo Orlando was warned by the VP of Talent that Plaintiff would
face retaliation from the CEO if she made a formal complaint and that Talent would attempt to
resolve her complaints informally.  When Plaintiff received word from her team that many of her
subordinates were seeking new positions due to Mr. Galvin's conduct, she made an official

complaint.  Ms. Ramundo Orlando's "concerns relative to Dale [Galvin]" then led to the Orrick

investigation.  SOMF ¶ 59.

More tellingly, the investigation in October 2019 interviewed witnesses regarding

potential discrimination by both Mr. Galvin <u>and</u> Ms. Ramundo Orlando, and was not limited to

Jenny Miller's complaint regarding Plaintiff.  The investigator concluded, on October 28, 2019:

> Based on our interviews and review of the documents and other communications,
> we find there is no evidence, of **that <u>either</u> Mr. Galvin or Ms. Orlando
> discriminated against any Rare employee on the basis of protected class, or that
> <u>either</u> of them created an unlawful hostile work environment**.

Orrick Report, **Att. 6** at 12, Sec. III (emphasis added).  Other parts of the report demonstrate the

investigator was tasked with determining whether Mr. Galvin had engaged in discriminatory

conduct:

- Orrick questioned Jenny Miller regarding whether Mr. Galvin had engaged in any
  discriminatory conduct.  *See* Orrick Report, **Att. 6**, at p. 2.

- Orrick questioned Katie Schweigart regarding whether Mr. Galvin had engaged in any
  discriminatory conduct.  *See id.,* at p. 4 ("Ms. Schweigart has never observed Mr. Galvin
  treat any employees in an unfair or discriminatory manner").

In other words, in sharp contrast to Rare's position now, Rare clearly understood Ms.

Ramundo Orlando's prior complaints regarding Mr. Galvin to be complaints regarding potential

discrimination and directed its investigator accordingly.  Therefore, not only were Ms. Ramundo

Orlando's complaints legally considered protective activity, but Rare's own actions show that Rare

also believed that Ms. Ramundo Orlando engaged in protected activity prior to the completion of

Orrick's investigation.

### B.    The Evidence Shows Rare Took Adverse
### Employment Actions against Plaintiff

Defendant does not dispute that Rare's administrative suspension, and then termination,

of Ms. Ramundo Orlando constitute adverse employment actions, but erroneously claims that

these were the only retaliatory actions that satisfy the second element of a retaliation claim. Under the "materially adverse" standard under a Title VII claim of retaliation, "a retaliation claim need not plead material changes to employment conditions." *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 835 (E.D. Va. 2016). An employment action qualifies as retaliation so long as it is "materially adverse so as to deter a reasonable person from engaging in protected activities." *Id.* To this end, Rare retaliated against Ms. Ramundo Orlando by requiring her to apologize, placing her on leave, refusing to allow her to attend a conference on Rare's behalf, and terminating her.

>    **C.    Rare's Decision to Suspend and Terminate Ms. Ramundo Orlando
>          Were Directly Related to Ms. Ramundo Orlando's Complaints
>          About Dale Galvin and of Gender Discrimination**

There remain significant and genuine issues of material fact as to whether Rare's decision to suspend and then terminate Ms. Ramundo Orlando were causally related to her complaints about Mr. Galvin and then about retaliation.

First, Ms. Ramundo Orlando was warned by Caryn Perrelli that she would face retaliation if she made a formal or written complaint about Dale Galvin; these warnings would prove to be prescient. When Ms. Ramundo Orlando made a verbal complaint to Ms. Perrelli in August 2019 that Mr. Galvin was discriminating and harassing her due to her gender, Ms. Perrelli responded that she should not put anything in writing. *See* Pl. Dep., **Att. 2**, at 197:7-198:12. Ms. Ramundo Orlando prepared a statement to Ms. Perrelli at the time but shared it only with a colleague out of fear of retaliation. *Id.* at 198:3-200:14; *see also* **Att. 8**.

When Ms. Ramundo Orlando did finally make a formal, written complaint about Mr. Galvin, Mr. Galvin immediately responded by sending a complaint against Ms. Ramundo Orlando drafted by his assistant, Jenny Miller, regarding an incident that took place months

prior.  *See* SOMF ¶ 54.  Once the complaint was investigated, both the investigation report and Mr. Jenks recognized that the timing of Mr. Galvin's disclosure appeared retaliatory, but rather than disciplining or terminating Mr. Galvin, Rare decided to terminate Ms. Ramundo Orlando instead. This decision was made well before the purported issues with Ms. Ramundo Orlando's "reflection" or her attendance at the OECD conference, strongly suggesting that Ms. Ramundo Orlando was terminated for complaining about Mr. Galvin – just as Ms. Perrelli had warned.

Second, Rare's decision to suspend and then terminate Ms. Ramundo Orlando came immediately after her November 4, 2019, complaint of discrimination regarding Mr. Galvin and Ms. Ramundo Orlando's subsequent complaint to Mr. Jenks that his requirement that she "repent" for her actions was retaliatory.  SOMF ¶ 73.  "A causal connection may be inferred when the adverse employment action is taken shortly after a defendant learns of the employee's participation in protected activity."  *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004).  Here, Mr. Jenks and Rare made the decision to terminate Ms. Ramundo Orlando's employment less than two weeks after she made a second written complaint regarding Mr. Galvin, requested that Rare retract Ms. Miller's complaint from her employee file, and a week after Ms. Ramundo Orlando told Rare's VP of Talent that she was "not going to apologize for complaining about gender discrimination," that "[t]here has never been an investigation of my gender discrimination claims," and that Rare's actions were retaliatory.  SOMF ¶ 73.  Rather than investigate Ms. Ramundo Orlando's allegations, Rare made the decision to terminate Ms. Ramundo Orlando. SOMF ¶ 80. (Email from Jenks to Galvin on November 22, 2019 stating that Mr. Jenks "let Valeria go this evening.")  This decision was made weeks before Ms. Ramundo Orlando attended the OECD conference that Rare now claims to be the reason for her termination.

Finally, Mr. Jenks was explicit that he intended to terminate Ms. Ramundo Orlando on November 13, 2019, for retaining counsel to advise her regarding her employment situation. SOMF ¶ 80 ("If she is going to keep lawyers lingering on the sidelines of all of our discussions, I am going to want to find an amicable way to exit her.")  Mr. Jenks's statement shows animus against Ms. Ramundo Orlando for raising complaints about discrimination and retaliation, creating a genuine issue of material fact as to whether Rare retaliated against Ms. Ramundo Orlando for complaining about Dale Galvin.

Taken together, Rare's proffered reasons for Ms. Ramundo Orlando's separation and termination are inconsistent, pretextual, and strongly suggest retaliation.  Defendant's motion on this claim should be denied.

## CONCLUSION

For the reasons set forth above, Plaintiff Valeria Ramundo Orlando respectfully requests this Court deny Defendant Rare's Motion for Summary Judgment in its entirety.


January 28, 2022                     */S/ CARLA D. BROWN*
                                     Carla D. Brown, VSB 44803
                                     Daphne Shih Gebauer, VSB 75415
                                     CHARLSON BREDEHOFT COHEN
                                       BROWN & NADELHAFT, P.C.
                                     11260 Roger Bacon Drive, Suite 201
                                     Reston, Virginia 20190
                                     cbrown@cbcblaw.com
                                     (703) 318-6800  Telephone
                                     (703) 318-6808  Facsimile
                                     *Counsel for Plaintiff, Valeria M. Ramundo Orlando*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of January, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to the following:

Michael E. Barnsback, Esq.
O'Hagan Meyer, PLLC
2560 Huntington Ave., Suite 204
Alexandria, VA 22303
Telephone:  (703) 775-8601
Facsimile:  (804) 403-7110
MBarnsback@ohaganmeyer.com
*Counsel for Defendant Rare*

*/S/ CARLA D. BROWN*
Carla D. Brown, VSB 44803
CHARLSON BREDEHOFT COHEN
 BROWN & NADELHAFT, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
cbrown@cbcblaw.com
(703) 318-6800  Telephone
(703) 318-6808  Facsimile
*Counsel for Plaintiff,*
 *Valeria M. Ramundo Orlando*